Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
**SHEGERIAN & ASSOCIATES, INC.**
145 S Spring Street, Suite 400
Los Angeles, California 90012
Telephone Number: (310) 860 0770

Jeffrey A. Klafter, Esq.
JAK@klafterlesser.com
Seth R. Lesser, Esq.
Seth@klafterlesser.com
Sarah Sears, Esq.
Sarah.Sears@klafterlesser.com
**KLAFTER LESSER LLP**
Two International Drive, Suite 350
Rve Brook. NY 10573
Telephone Number: (914) 934-9200

Attorneys for Plaintiffs

CAPTION CONTINUED ON NEXT PAGE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JAMES RUFFULO and VALERIE YANKUS, individually and on behalf of all others similarly situated,

     Plaintiff,

  vs.

FARMERS INSURANCE EXCHANGE, FARMERS GROUP INC., TRUCK INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, and DOES 1 through 10 inclusive

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:23-cv-01796-FMO-MAAx

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**

Complaint filed: March 9, 2023

1

James Ruffulo and Valerie Yankus (together "Plaintiffs") submit this memorandum in support of their motion for preliminary approval of the proposed collective and class $10 million settlement ("Settlement") set forth in the Settlement Agreement ("Settlement Agreement" (Lesser Decl. Ex. 1 ("SA")) between Plaintiffs, on behalf all persons who were non-California agents of Farmers Insurance Exchange, Truck Insurance Exchange, and Fire Insurance Exchange (collectively, "Farmers" and together collectively with Defendant Farmers Group, Inc., "Defendants") (together with Plaintiffs, the "Parties"). The Settlement involves two categories of claims: (1) claims for age discrimination under California's Fair Employment and Housing Act ("FEHA") on behalf of older (aged 40+) Farmers agents who assert they were misclassified as independent contractors and their contracts pretextually terminated by Farmers pursuant to its Managing Underperforming Agents ("MUA") program (the "FEHA Class"), and (2) claims under the Fair Labor Standards Act ("FLSA") on behalf of Farmers agents who assert they were misclassified as independent contractors and denied overtime compensation (the "FLSA Collective"). Together, the FEHA Class and FLSA Collective are referred to as the "Settlement Classes or Settlement Class Members." All claims in the case are brought on behalf of agents who worked outside of California.

As set forth in more detail below, Plaintiffs respectfully submit that this settlement meets all the criteria necessary for preliminary (and ultimately final) Court approval. The proposed settlement not only avoids time and litigation costs but also marked litigation risk, both as to certification and as to the merits of Plaintiffs' claims, including the threshold issue of alleged misclassification. It has sufficient indicia of being fair, reasonable, and adequate such that the Court can determine whether it should be given final approval after notice is sent to the Settlement Class Members informing them of it and giving them a fair opportunity to be heard and to participate or to opt out.

1

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ................................................................................................ 1

II.   THE SETTLEMENT AGREEMENT ............................................................... 4

    A.  Overview ................................................................................................. 4

    B.  The Settlement Class and Collective .................................................... 4

    C.  Settlement Administrator and Proposed Notice Program .................... 5

    D.  Opt-Outs and Objections ....................................................................... 6

    E.  Attorneys' Fees and Costs, and Service Award .................................... 6

III.  THE PROPOSED FEHA CLASS SETTLEMENT IS
     REASONABLE AND FAIR ........................................................................... 7

    A.  The FEHA Class/Rule 23 ....................................................................... 7

    B.  There is a Strong Basis to Believe that the Settlement is Fair,
       Reasonable, and Adequate Under This Court's Test ........................... 9

       1.  The Settlement Is The Product of Serious, Informed Non-Collusive
          Negotiations ................................................................................... 9

       2.  The Settlement Does Not Improperly Grant Preferential Treatment
          To Class Representatives or Segments of the Class ................... 10

       3.  The Settlement Falls Within the Range of Possible Approval ...... 11

       4.  The Settlement Has No Obvious Deficiencies ............................. 15

    C.  Settlement Is Appropriate Under the *Hanlon* Factors ...................... 15

       1.  The Complexity, Expense and Duration of the Litigation Weigh in
          Favor of Preliminary Approval .................................................... 15

       2.  The Strength of the Plaintiffs' Case and The Risk of Maintaining
          Class Action Status Throughout the Trial Weigh in Favor of
          Preliminary Approval ................................................................... 16

       3.  The Amount Offered in Settlement Weighs in Favor of Preliminary
          Approval ........................................................................................ 16

       4.  Stage of the Proceedings and Extent of Discovery Completed
          Weigh in Favor of Preliminary Approval .................................... 17

       5.  The Experience and Views of Counsel Weigh in Favor of
          Preliminary Approval ................................................................... 17

i

6.   The Reaction of the Class Members to the Proposed Settlement ............ 18

7.   The Presence of a Governmental Participant ............................................ 18

D.   The Settlement Is Not a Product of Collusion As The *Bluetooth* Factors Are Satisfied ........................................................................................ 18

IV.   THE COURT SHOULD PRELIMINARILY CERTIFY A SETTLEMENT CLASS FOR FEHA CLASS MEMBERS ................................. 21

A.   The Elements of Rule 23(a) Are Met ................................................................. 22

1.   Numerosity Under Rule 23(a)(1) ..................................................... 22

2.   Commonality Under Rule 23(a)(2) ................................................... 22

3.   Typicality Under Rule 23(a)(3) ....................................................... 23

4.   Adequacy Under Rules 23(a)(4) And Rule 23(g) Is Met ..................... 23

B.   The Requirements of Rule 23(b)(3) Are Met ...................................................... 24

1.   Predominance Is Met ......................................................................... 24

2.   Superiority Is Met ............................................................................. 25

V.   THE PROPOSED FLSA COLLECTIVE SETTLEMENT IS REASONABLE AND FAIR ....................................................................... 26

A.   Bona Fide Dispute ........................................................................................ 27

B.   The Proposed Settlement is Fair and Reasonable ......................................... 28

1.   Range of Possible Recovery ............................................................ 29

2.   The Seriousness of Litigation Risks .................................................. 29

3.   Stage of Proceedings and Amount of Discovery Completed ................. 30

4.   The Scope of the Release ................................................................. 30

5.   The Experience and View of Counsel and Opinion of Participating Plaintiffs ................................................................................. 31

6.   The Possibility of Fraud or Collusion ............................................... 31

VI.   THE COURT SHOULD PRELIMINARILY CERTIFY A COLLECTIVE ............................................................................................ 31

VII.   THE PROPOSED CLASS NOTICE AND CLAIM FORM SHOULD ISSUE ........................................................................................ 33

A.   The Class Notice Satisfies Due Process ......................................................... 33

ii

    B.  The Proposed Notices Are Accurate and Informative ....................................33

VIII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED....................34

IX.  CONCLUSION .................................................................................................34

iii

# TABLE OF AUTHORITIES

**Page**

### Cases

*Acosta v. Trans Union, L.L.C.*, 243 F.R.D. 377 (C.D. Cal. 2007) ..............................22

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)...................................................21, 24

*Barbosa v. Cargill Meat Sols. Corp*, 297 F.R.D. 431 (E.D. Cal. 2013)......................26

*Bautista v. Harvest Mgmt. Sub LLC,* 2013 U.S. Dist. LEXIS 200175,
    (C.D. Cal. Oct. 16, 2013)...................................................................................15

*Beer v. GoBrands, Inc.*, 2024 U.S. Dist. LEXIS 93502, (C.D. Cal. Jan. 3,
    2024)..............................................................................................................passim

*Bond v. Ferguson Enters.*, 2011 U.S. Dist. LEXIS 6976, (E.D. Cal. Jan.
    24, 2011)..................................................................................................22, 33

*Briseño v. Henderson,* 998 F.3d 1014 (9th Cir. 2021) ...........................................18, 19

*Brown v. Tetra Tech., Inc.,* 2024 U.S. Dist. LEXIS 62348, (E.D. Cal.
    Apr. 4, 2024).......................................................................................................19

*Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450,
    (E.D.N.Y. May 17, 1990) ...................................................................................14

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), ........................31, 32

*Capaci v. Sports Rsch. Corp.*, 2024 U.S. Dist. LEXIS 158463, (C.D. Cal.
    June 10, 2024).................................................................................................8, 14

*Chen v. W. Digit. Corp.*, 2020 U.S. Dist. LEXIS 268083, (C.D. Cal. Apr.
    3, 2020)..........................................................................................................passim

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...........................18

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992)............................................8

*Clesceri v. Beach City Investigations & Protective Servs.*, 2011 U.S. Dist.
    LEXIS 11676, (C.D. Cal. Jan. 27, 2011).............................................................9

*Craft v. County of San Bernardino,* 624 F. Supp. 2d 1113 (C.D. Cal.
    2008)....................................................................................................................19

*Dashiell v. Cty. of Riverside*, 2018 U.S. Dist. LEXIS 121166, (C.D. Cal.
    July 19, 2018) ...........................................................................................28, 30, 31

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 (1974); ..........................................33

*Fraser v. ASUS Comput. Int'l,* 2012 U.S. Dist. LEXIS 181315, (N.D. Cal.
    2012)....................................................................................................................14

iv

*Gen. Tel. Co. of the Southwest v. Falcon* (1982) 457 U.S. 147 .................................... 23

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, (N.D. Cal. Jan. 26, 2007) ........................................................................................ 18, 30

*Gutierrez v. New Hope Harvesting, LLC.*, 2024 U.S. Dist. LEXIS 76786, (C.D. Cal. Apr. 26, 2024) ...................................................................... 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................... passim

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..... 18, 19, 20

*In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ...................... 26

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................ 11

*Jabbari v. Farmer*, 965 F.3d 1001 (9th Cir. 2020) .................................................... 25

*Jennings v. Open Door Mktg.*, LLC, 2018 U.S. Dist. LEXIS 171356, (N.D. Cal. Oct. 3, 2018) .................................................................. 27, 28

*Jiangchen v. Rentech*, Inc., 2019 U.S. Dist. LEXIS 180474, (C.D. Cal. Oct. 10, 2019) ................................................................................ 20

*Jordan v. L.A. County*, 669 F.2d 1311 (9th Cir. 1982) ............................................. 22

*Kempen v. Matheson Tri-Gas, Inc.*, 2016 U.S. Dist. LEXIS 100537, (N.D. Cal. Aug. 1, 2016) ..................................................................... 31

*Kendall v. Odonate Therapeutics, Inc.*, 2022 U.S. Dist. LEXIS 6190, (S.D. Cal. Jan. 11, 2022) ..................................................................... 20

*Labrie v. UPS Supply Chain Sols., Inc.*, 2009 U.S. Dist. LEXIS 25210, (N.D. Cal. Mar. 18, 2009) ................................................................... 32

*León v. San Diego Metro. Transit Sys.*, 2017 U.S. Dist. LEXIS 100428, (S.D. Cal. June 26, 2017) .................................................................... 27

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .............................. 17

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................ 27

*Melin v. Farmers Group, Inc., et al.*, Case No. RG19001677 ............................... passim

*Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593 (E.D. Cal. 2015) .................... 20

*Morgan v. United States Soccer Fed'n*, 2022 U.S. Dist. LEXIS 206098, (C.D. Cal. Aug. 11, 2022) ............................................................... 20, 27

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ............... 18, 23, 24

*Nakash v. NVIDIA Corp. (In re NVIDIA GPU Litig.)*, 539 F. App'x 822 (9th Cir. 2013) ........................................................................................ 18

v

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D.
    Cal. 2004) ...................................................................................................11, 16, 17

*Negrete v. Conagra Foods*, 2021 U.S. Dist. LEXIS 179282, (C.D. Cal.
    June 21, 2021).........................................................................................................11

*Officers for Justice*, 688 F.2d 615 (9th Cir. 1982) ..............................................11

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014)......................................16

*Otey v. CrowdFlower, Inc.*, 2015 U.S. Dist. LEXIS 141338, (N.D. Cal.
    Oct. 16, 2015).........................................................................................................26

*Rabin v. PricewaterhouseCoopers LLP*, 2020 U.S. Dist. LEXIS 211546,
    (N.D. Cal. Aug. 19, 2020) ................................................................................23, 25

*Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013)..........................10

*Ramirez v. Merrill Gardens, LLC*, 2024 U.S. Dist. LEXIS 103749, (E.D.
    Cal. June 10, 2024).................................................................................................20

*Reed v. Bridge Diagnostics, LLC*, 2023 U.S. Dist. LEXIS 130595, (C.D.
    Cal. June 13, 2023)......................................................................................27, 31, 32

*Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270
    (E.D. Cal. 2007)......................................................................................................20

*Ross v. Citizens Bank, N.A.,* 667 F.3d 900 (7th Cir. 2012)..................................22

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ..........................22

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.
    3d 341 ......................................................................................................................13

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal.
    2016)...................................................................................................28, 29, 30, 31

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, (S.D.
    Cal. June 1, 2010)...................................................................................................20

*Slezak v. City of Palo Alto,* 2017 U.S. Dist. LEXIS 96900, 2017 WL
    2688224, (N.D. Cal. June 22, 2017)......................................................................30

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) ...................................11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................23

*Stockwell v. City & Cty. of S.F.,* 749 F.3d 1107 (9th Cir. 2014)...............................22

*Stoddart v. Express Servs.*, 2019 U.S. Dist. LEXIS 17663, (E.D. Cal. Feb.
    1, 2019)....................................................................................................................21

*Thompson v. Costco Wholesale Corp.*, 2017 U.S. Dist. LEXIS 24964,
    (S.D. Cal. Feb. 22, 2017)........................................................................................32

vi

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ...................19

*Wang v. Chinese Daily News, Inc*., 737 F.3d 538 (9th Cir. 2013) ..............................21

**Statutes**

28 United States Code § 1715 ...................................................................................34

29 United States Code § 203...............................................................................passim

Government Code §§ 12900-12996......................................................................passim

**Rules**

Federal Rules of Civil Procedure, Rule 23 .........................................................passim

**Treatises**

4 Newberg on Class Actions § 13:15 (6th ed. 2023)................................14, 19, 26, 34

Manual for Complex Litigation, Fourth, § 13.14, at 172-73 (2004) .......................8, 34

vii

# I.    **BACKGROUND**

Plaintiffs and the Settlement Class Members are or were insurance agents appointed with Farmers as independent contractor agents outside of California. Third Amended Complaint ("TAC") ¶ 2. Plaintiff Ruffulo was appointed as a Farmers insurance agent in Hillside, Illinois from 1985 to March 2020 and Plaintiff Yankus was appointed as a Farmers agent in Connecticut from January 2015 to June 2020. *Id*. at ¶¶ 20, 26. The appointments of Farmers agents are governed by agent appointment agreements (or similar corporate agent agreements), which set forth the general terms of their business relationship with Farmers and state that agents are independent contractors. *Id*. at ¶¶ 51, 60. Plaintiffs allege (and Defendants contest) that Defendants implemented policies that required agents to follow multiple programs, aimed at standardizing the experience for clients, so that Defendants' top-down control over their work and functionality rendered them employees, not independent contractors, making Defendants liable for overtime wages. *See* TAC, Count I. According to Farmers' records, there are approximately 10,406 potential FLSA Collective members. Lesser Decl. ¶ 16.

Starting in 2017, Farmers implemented the MUA program which Plaintiffs alleged was a pretext to terminate its older agents to clear the way for younger, less expensive agents. Plaintiffs allege that under the MUA program, members of Farmers' sales force aged 40 who had lucrative commissions and more favorable employment terms and conditions were terminated in favor of new hires, who, Plaintiffs contend, were almost all under 40 years of age. *See* TAC at ¶¶ 94-116. The MUA program was effectuated in three waves between 2017 and 2020. *Id*. at ¶ 102. Plaintiffs' data analysis is that the average tenure of terminated MUA agents was about 22.5 years. The appointments of Plaintiffs Ruffulo and Yankus were both terminated pursuant to MUA in 2020, then aged in their 60s and 50s, respectively. *Id*. at ¶¶ 96, 113. Plaintiffs' FEHA Class claims on were thus for disparate impact and disparate

1 treatment age discrimination, (Counts II and III) and failure to prevent age

2 discrimination in violation of the FEHA (Count IV). According to Defendants'

3 records, the FEHA Class has approximately 255 individuals. Lesser Decl. ¶ 16.

4     This action was instituted on March 9, 2023. Days later, Plaintiffs filed a motion

5 for conditional certification of the FLSA Collective. On July 10, 2023, Defendants

6 filed a motion to dismiss, and Plaintiffs responded. After the Parties met and

7 conferred, Plaintiffs withdrew the motion for conditional certification with the

8 understanding it would be refiled following the adjudication of the motion to dismiss.

9 The Court granted the motion to dismiss without prejudice on January 29, 2024, and

10 instructed Plaintiffs to file a Second Amended Complaint, which was filed on

11 February 16, 2024. Following a meet and conferral, Plaintiffs filed the Third

12 Amended Complaint on March 11, 2024, followed by Defendants' second motion to

13 dismiss and Plaintiffs' opposition in April and May 2024.

14     On March 17, 2025, the Court granted in part and denied in part the motion to

15 dismiss, dismissing only the UCL claim, and only as it related to the FLSA violations,

16 leaving all other claims intact. On May 8, 2024, Defendants filed a motion to certify

17 the order denying the second motion to dismiss for immediate interlocutory appeal,

18 which Plaintiffs then opposed.

19     While the above motion practice was ongoing, the Parties conducted discovery,

20 and Plaintiffs' counsel also independently spoke with a number of MUA-affected

21 agents as to both sets of claims. Plaintiffs also substantially benefited from review of

22 the evidentiary records of similar actions filed against Defendants in California state

23 court. *See* Lesser Decl. ¶ 7 (setting forth cases and their claims). This was facilitated

24 by co-counsel in this matter, Shegarian & Associates, who was counsel in one of those

25 cases and successfully moved to modify the protective order in that action. Lesser

26 Decl. ¶ 9. In addition to tens of thousands of pages of discovery documents, Plaintiffs

27 reviewed the full trial record in *Melin v. Farmers Group, Inc., et al.*, Case No.

28

2

RG19001677, an MUA-based FEHA age discrimination brought as a mass action by over 80 California Farmers agents. *Melin* resulted in a jury verdict finding that the agents were independent contractors, not employees. *Id.* ¶ 10. As part of their preparation for a renewed motion for FLSA Section 16(b) notice and conditional certification, Plaintiffs' counsel also obtained a number of declarations. *Id.* ¶ 12. Finally, the Parties engaged in pre-mediation informal discovery, particularly including data on members of both the putative FEHA Class and FLSA Collective, which was necessary to evaluate the scope of the claims and their value. *Id.* ¶ 15.

When the Parties faced this Court's required settlement conference, they realized that they each had an exceedingly strong understanding of the underlying factual and legal issues as well as the risks both sides faced. *Id.* ¶ 19. Their understanding of the risks involved was also driven by the fact that Defendants have twice prevailed on summary judgment this year on agent misclassification, a threshold issue for both of Plaintiffs' claims. *Id.* ¶ 20. Thus, rather than expending further substantial time and effort replicating prior discovery and engaging in what could have been extended discovery and motion practice in this case—which would have included Section 16(b) notice, Rule 23 class certification, corporate discovery depositions, expert reports, and expert discovery— the Parties agreed that a potential mediated resolution could be more efficient, expeditious and sensible to both sides. *Id.* ¶ 13.

The Parties agreed to proceed to a serious, good-faith mediation and engaged one of the country's leading labor and employment mediators, Mr. Hunter Hughes, Esq., for the mediation. *See* Hughes Decl. Before the mediation, Plaintiffs requested further informal discovery from Defendants to ensure that they were entirely prepared. Lesser Decl. ¶ 15. On June 23, 2025, the Parties participated in a full-day session with Mr. Hughes. At the end of the day, he made a mediator's proposal which set forth the material terms of the Settlement, *id.* ¶ 20; Hughes Decl. ¶ 8, which the Parties then finalized in the full Settlement Agreement that sets forth the proposed Settlement.

3

## II.    THE SETTLEMENT AGREEMENT

### A.    Overview

Under the Settlement, Defendants agreed to an "all in" settlement up to $10 million to resolve all claims at issue. The Settlement payment would be allocated among the Settlement Classes, Class Counsel (for Court-approved attorneys' fees and costs), the costs of settlement administration to be paid to the Settlement Administrator, and the service awards to be paid to the named Plaintiffs. SA ¶¶ 1.18. The Gross Settlement Amount of $10,000,000, less attorneys' fees, costs, settlement administrative costs, and service awards, will be allocated 55% to the Participating FEHA Class Members on a pro rata basis (the FEHA Class Allocation) and 45% to the Participating FLSA Collective Members (*i.e.*, those who opt-in) based on the number of workweeks worked by a Participating FLSA Collective Member.[1] *Id.* ¶ 8.1.

### B.    The Settlement Class and Collective

The proposed FEHA Class is defined as follows:

> all individuals not excluded pursuant to Section 4 [prior releases] who (i) signed a Farmers Agent Appointment Agreement or a Farmers Corporate Agent Appointment Agreement; (ii) worked as a Farmers agent or Supervising Agent for an incorporated Farmers agency outside of the state of California at any time during the Settlement Class Period (as defined in Section 1.34); (iii) whose appointment was terminated by Farmers in connection with the Managing Underperforming Agents Process (as defined in Section 1.20); and (iv) who was 40 years of age or older on the effective date of their appointment's termination.

---

[1] *See* Settlement Agreement Section 8.1.2.1: "each Participating FLSA Collective Member's share will be determined by dividing the FLSA Collective Allocation by the total number of workweeks that the FLSA Collective Members worked during the Settlement Class Period, then multiplying that sum by the total number of workweeks worked by the Participating FLSA Collective Member during the Settlement Class Period." Any amount of the FLSA Allocation not exhausted by the individual settlement payments to the Participating FLSA Collective Members will not be paid by Defendants inasmuch as Defendants will not receive a release for those non-participating individuals.

4

SA ¶ 1.18.

The proposed FLSA Collective is defined as follows:

> all individuals not excluded pursuant to Section 5 who (i) signed a Farmers Agent Appointment Agreement or a Farmers Corporate Agent Appointment Agreement not containing an agreement to arbitrate; and (ii) worked as a Farmers agent or Supervising Agent for an incorporated Farmers agency outside of the state of California at any time during the Settlement Class Period.

SA ¶ 1.13. The Settlement Class Period is from March 9, 2020, to September 30, 2025, or the date on which the Court grants Preliminary Approval, whichever is sooner. *Id.* ¶ 1.34. In exchange for the consideration stated above, the Settlement Classes shall release Defendants from any claims that were or could have been alleged in this Action. *Id.* ¶ 13.

### C.    Settlement Administrator and Proposed Notice Program

The proposed Settlement Administrator is Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a nationally recognized and experienced class action administrator. Plaintiffs expect Epiq's settlement administration expenses – obtained through a bid process – will not exceed $114,000, to be paid from the Total Settlement Payment allocated to the "Fees, Awards, and Expenses." SA ¶ 3.4. The Parties' proposed notice process is designed to reach as many Settlement Class Members as possible at a reasonable cost to the Settlement Classes and represents, in Settlement Class Counsel's view and experience, the best notice practicable under the circumstances. Lesser Decl. ¶ 24. As set forth in the Settlement Agreement, notice shall be provided by mail (after address updating) and email to all potential Settlement Class Members and, in addition, the Settlement Administrator will create and maintain a website containing important information about the Settlement and case-related documents, and will also establish and maintain a toll-free telephone line that the

5

Settlement Class Members can use to get answers to frequently asked questions. SA ¶ 3.2.

The Notice Packets – one to the FEHA Class and one to the FLSA Collective – will include, among other information, a description of the material terms of the Settlement; the date by which FLSA Collective members may opt in to the Settlement; a date by which FEHA Class members may opt out of the Settlement; the date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing is scheduled to occur; and the website at which Settlement Class Members may access the Settlement Agreement and other related documents and information. *Id.,* Exs. A, C.

### D.    Opt-Outs and Objections

As noted, the Notices will inform FEHA Class Members of their right to opt out of the Settlement, the FLSA Collective Members of their rights to opt in to the Settlement, and all Settlement Class Members of their right to object to the Settlement. *Id.*, Exs. B, D. FEHA Class Members may opt out of the Settlement up to 30 days prior to the Final Approval Hearing. *Id.* ¶ 4.2. The Notices will also inform Settlement Class Members of their right to object to the Settlement and/or to Settlement Class Counsel's application for attorneys' fees, costs, and service awards. *Id.*, Exs. A, C. The Objection Deadline is 30 days prior to the Final Approval Hearing. *Id.* ¶ 10. As explained in the Notices, objections made to the Court must include the information identified in the Notices, including information about the objector, their counsel (if any), and previous objections they or counsel have made to ensure that any objections are made for a proper purpose. SA, Exs. A, C.

### E.    Attorneys' Fees and Costs, and Service Award

To date, Settlement Class Counsel have not been paid for their efforts or reimbursed for litigation costs incurred. The Settlement Agreement provides that counsel can apply for an award of attorneys' fees and costs of up to 33.33% of the

6

Gross Settlement Amount, plus expenses to compensate them for the time, risk and expense they incurred pursuing claims on behalf of the Settlement Classes. *Id.* ¶ 8.4.

Settlement Class Counsel will also ask the Court to approve a service award for the two Class Representatives of $10,000.00 each. *Id.* ¶ 8.5.

The fee and cost and service award requests are explained and set forth in the Notices. *See* SA Exs. A, C.

## III. THE PROPOSED FEHA CLASS SETTLEMENT IS REASONABLE AND FAIR

Because there are two forms of collective settlement here – the FEHA Class and FLSA Collective – each has to be analyzed separately.

### A. The FEHA Class/Rule 23

Fed. R. Civ. P. 23(e) provides the mechanism for settling a class action for settlement purposes:

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

7

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). In determining whether preliminary approval is warranted, the primary issue is whether the proposed settlement is within the range of what might be found fair, reasonable, and adequate so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval. *See* Manual for Complex Litigation, Fourth, § 13.14, at 172-73 (2004) ("Manual Fourth").

In so determining, this Court has held that preliminary approval and class settlement notice are appropriate where "the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Capaci v. Sports Rsch. Corp.*, No. CV 19-3440 FMO (PDx), 2024 U.S. Dist. LEXIS 158463, at *11-12 (C.D. Cal. June 10, 2024) (Olguin, J.); *Beer v. GoBrands, Inc.*, No. CV 22-7386 FMO (RAOx), 2024 U.S. Dist. LEXIS 93502, at *10 (C.D. Cal. Jan. 3, 2024) (Olguin, J.) (same). Since "a full fairness analysis is unnecessary" because "class members will receive an opportunity to be heard on the settlement," *Chen v. W. Digit. Corp.*, No. 8:19-cv-00909-JLS-DFM, 2020 U.S. Dist. LEXIS 268083, at *31 (C.D. Cal. Apr. 3, 2020), "[c]loser scrutiny is reserved for the final approval hearing." *Beer*, 2024 U.S. Dist. LEXIS 93502, at *10 (quotation omitted).

The Ninth Circuit has also set forth the following factors to consider:

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of

8

discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon* factors").

Plaintiffs will first address the factors set forth by this Court and then provide a separate analysis under the *Hanlon* factors. Under either test, the Settlement is fair, reasonable, and adequate, and not a product of collusion, and therefore should be preliminarily approved.

**B. There is a Strong Basis to Believe that the Settlement is Fair, Reasonable, and Adequate Under This Court's Test**

**1. *The Settlement Is The Product of Serious, Informed Non-Collusive Negotiations***

The Parties were both exceedingly well-versed and cognizant of the issues of law and fact in this case. In addition to the discovery efforts undertaken by Plaintiffs, including speaking with numerous potential class members about the claims, Plaintiffs reviewed thousands of pages of documents, deposition transcripts, and trial transcripts from the similar cases against Defendants. Prior to the mediation, Defendants produced class data for the FEHA Class and FLSA Collective. Plaintiffs also benefitted from the expert statistical analysis from a case that analyzed Farmers' data concerning the MUA program and its impact. Lesser Decl. ¶ 9. *See generally Clesceri v. Beach City Investigations & Protective Servs.*, No. CV-10-3873-JST (RZx), 2011 U.S. Dist. LEXIS 11676, at *27-28 (C.D. Cal. Jan. 27, 2011) ("[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."). Likewise, Defendants' counsel served as defense counsel in the similar matters. Accordingly, the Parties had more than sufficient information to make an informed decision about Settlement. *Chen*, 2020 U.S. Dist. LEXIS 268083, at *39

9

(parties had sufficient information to make informed decision about settlement where parties engaged in substantial informal discovery ahead of mediation and retained experts to analyze data). Moreover, the Parties used an experienced mediator, Mr. Hughes. Accordingly, this factor is satisfied. *Beer*, 2024 U.S. Dist. LEXIS 93502, at *24 (C.D. Cal. Jan. 3, 2024) (determining that the parties thoroughly investigated and considered their own and the opposing party's positions where defendants produced data concerning the size of the class and damages ahead of mediation before an experienced mediator).

### 2. The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives or Segments of the Class

As discussed, the Settlement provides that 55% of its value is allocated to the FEHA Class while 45% is allocated to the FLSA Collective. Although it leads to a larger per capita recovery for the FEHA Class Members, it is not improper preferential treatment. The nature of being terminated after decades of work due to alleged age discrimination has a larger economic impact upon an individual than does allegedly not being fully paid for overtime worked. Further, age discrimination claims can be of substantially more value when presented to a jury in court, and Participating FLSA Collective Members would need to prove that they even worked overtime hours, which can be a challenge where juries are skeptical of FLSA opt-ins' testimony. In fact, the allocation here was specifically proposed by Mr. Hughes as a result of his extended years in both practice and as a mediator of similar claims, *see* Hughes Decl. ¶ 8, and is one that Plaintiffs' Counsel found reasonable. Lesser Decl. ¶ 21.

As to the requested service awards, it is well accepted that such "payments to class representatives for their service to the class in bringing the lawsuit" are permissible if they do not "undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc*., 715 F.3d 1157, 1163 (9th Cir. 2013). Accordingly, the Court should "examine whether there is a 'significant disparity

10

between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328 (C.D. Cal. 2016) (Olguin, J.). Here, Plaintiffs are seeking incentive awards of $10,000 each. During the course of this litigation, they have helped to prepare and review complaint drafts, participated in written discovery, and monitored the litigation, all to the benefit of the Settlement Classes. Lesser Decl. ¶ 25. *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328 (C.D. Cal. 2016) (Olguin, J.) (approving incentive award of $10,000); *Negrete v. Conagra Foods*, No. CV 16-0631 FMO (AJWx), 2021 U.S. Dist. LEXIS 179282, at *26 (C.D. Cal. June 21, 2021) (Olguin, J.) (approving incentive award of $10,000 for multiple plaintiffs). This factor weighs in favor of approval.

### 3.  *The Settlement Falls Within the Range of Possible Approval*

In assessing the consideration obtained in a class action settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982). Additionally, the amount must be considered in the context of the challenges of the case and "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop*, 221 F.R.D. at 527. *See also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) ("a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair"); *Beer*, 2024 U.S. Dist. LEXIS 93502, at *26 (assessing reasonableness of settlement "viewed in light of the litigation risks and the costs, and delay of trial and appeal.

To assess reasonableness, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." Fed. R. Civ. P. 23 advisory committee's

11

note to 2018 Amendment. In this case, it is difficult to be mathematically precise, given the number of variables at issue. Prior to mediation, Defendants produced both commissions data for a large random sampling of putative FLSA Collective Members and data concerning the ages and compensation of the agents terminated via the MUA program as to the putative FEHA Class Members. Lesser Decl. ¶ 15. Though providing useful context, the data does not provide accurate mathematical certainty as to individual FEHA Class Member damages. This is because agents were paid pursuant to commissions and, as such, their earnings varied widely both year-to-year and compared to each other. Age, and therefore proximity to retirement, varied, as did whether agents were able to find employment or other work after their contracts were terminated. *See id*. Thus, while it is difficult to calculate with any type of certainty the alleged lost earnings of the FEHA Class, in preparation for the mediation, Plaintiffs' counsel calculated a reasonable, if not conservative, estimate of damages for the FEHA Class. Plaintiffs determined, based upon favorable resolution of all issues and a substantial amount of time worked by FEHA Class Members, that the FEHA Class damages totaled $71.3 million. *Id.* ¶ 16. This assumed no substantial discount from finding new work and assumed the maximum recovery possible favorable estimations. *Id.*

The Settlement provides for 55% of the $10 million, or $5.5 million, to be allocated to the FEHA Class and apportioned evenly among the Participating FEHA Class Members on a pro rata basis. Accordingly, assuming Court approval of the applications for attorneys' fees and costs and service awards, as well as the cost of settlement administration, the Settlement would provide a *net* recovery of approximately $13,000 for each of the 255 members of the FEHA Class. While this recovery is only a percentage of a theoretical best possible recovery, it must be analyzed in the context of the strength of Plaintiffs' case and the real likelihood of *no* recovery.

12

First, there are procedural risks, such as whether Plaintiffs could even obtain Rule 23 class certification, *see* Lesser Decl. ¶ 19, given such varying factors as differences in how agents operated their agencies, in the tenure of the agents who were subject to the MUA and in the success/productivity of the affected agents. But even assuming class certification was granted, there would be substantial merits-based risks, including:

(1) that Defendants could reassert that there are insufficient California-based contacts to warrant FEHA's application, an issue Defendants had moved to certify to the Ninth Circuit at the time of the mediation;

(2) that Defendants did not misclassify Plaintiffs or the FEHA Class as independent contractors. Defendants have vigorously argued that Plaintiffs and the FEHA Class retained the right to control the manner and means of providing the services set forth in their agent appointment agreements, consistent with independent contractor status, an issue on which Defendants have prevailed both at trial (in the *Melin* case) and twice on summary judgment (in the *Martinez* and *Richards* cases). *See* Lesser Decl. ¶ 7, Exs. 3, 4. Although Plaintiffs are confident that their claims have merit, there is no guarantee that Plaintiffs would prevail on the threshold issue of misclassification at trial (as the *Melin* case shows) much less even get to trial (as the *Martinez* and *Richards* cases show). Overcoming Defendants' arguments and defenses on the misclassification issue alone presents complex factual issues that would require time, expense, and uncertainty to resolve. *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341, 349 (issue of employee status is "one of fact" for the trier of fact);

(3) that, even if Plaintiffs were able to prevail on the misclassification predicate and establish that they were employees of Defendants, they could fail on the substantive merits of their FEHA claims, including that the MUA

13

program had a disproportionate impact on the FEHA Class and/or gave rise to an inference of age discrimination against the FEHA Class, especially given the defenses Defendants put forward in the *Melin* trial, including that many agents had not shown strong records of sales productivity (which contributed to Farmers' loss of market share at the time) and that during the relevant timeframe Farmers prioritized appointing experienced, capitalized agents, who tended to be older.

Given such risks and particularly in light of Defendants' record of success on the exact same claims in three recent cases (both by jury verdict and court decision), the Settlement falls within the range of possible approval, and this factor weighs in favor of approval. *Capaci v. Sports Rsch. Corp.*, No. CV 19-3440 FMO (PDx), 2024 U.S. Dist. LEXIS 158463, at *16 (C.D. Cal. June 10, 2024) (Olguin, J.) ("Under the circumstances, given the significant risks of litigation coupled with the delays associated with continued litigation, the court is persuaded that the benefits to the class fall within the range of reasonableness"). *See also Cagan v. Anchor Sav. Bank F.S.B.*, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

In addition to the settlement amount, the Court must also consider whether the settlement contains an overly broad release of liability. *See* 4 Newberg on Class Actions § 13:15 (6th ed. 2023); *see also, e.g., Fraser v. ASUS Comput. Int'l*, 2012 U.S. Dist. LEXIS 181315, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class). In this case, the FEHA Class release is limited to claims that were, or could have been, asserted in the case. SA ¶ 13.3. Accordingly, the Settlement falls within the range of possible approval. *Beer*, 2024

14

U.S. Dist. LEXIS 93502, at *28 (determining that "the Release adequately balances fairness to absent class members and recovery for the class with defendants' business interest in ending this litigation with finality" where settlement class members were not giving up any unrelated claims).

### 4. The Settlement Has No Obvious Deficiencies

"District courts have the duty and authority to protect the interests and rights of class members as well as to ensure the 'integrity of the settlement approval process,'" and thus, "before granting preliminary approval, the district court must find that the settlement 'has no obvious deficiencies.'" *Bautista v. Harvest Mgmt. Sub LLC,* No. CV 12-10004 FMO (CWx), 2013 U.S. Dist. LEXIS 200175, at *47 (C.D. Cal. Oct. 16, 2013) (Olguin, J.).

Here, for the reasons set forth above, there are no obvious deficiencies with the Settlement and thus, approval is proper under the test set forth by this Court.

### C. Settlement Is Appropriate Under the *Hanlon* Factors

#### 1. The Complexity, Expense and Duration of the Litigation Weigh in Favor of Preliminary Approval

While still in the discovery phase, the course of litigation has already been lengthy and expensive. At the time of mediation, Plaintiffs were in the process of obtaining further consents to join from putative FLSA Collective Members and preparing to file an updated motion for conditional certification. This matter has also already involved a twice-briefed motion to dismiss, along with motion practice seeking certification of the order denying the motion to dismiss. Accordingly, there remain unresolved disputes, including a motion that was *sub judice*. The Parties were beginning formal discovery in earnest, but Plaintiffs have already reviewed thousands of pages of documents exchanged in the similar cases, along with deposition transcripts and trial transcripts from the *Melin* case, extensive interviews with class members, and an expert report.

15

As both a wage and hour and age discrimination case, it could take a year or more to resolve this matter given the need for further extensive discovery, including depositions, discovery motions, motions for summary judgment, and motions *in limine*. Any trial would have likely been long and expensive. Preparing and presenting testimonial and documentary evidence at such a trial would have consumed tremendous amounts of time and resources. Any judgment would likely have been appealed. For example, the *Melin* case, which focused solely on the MUA program and not on wage and hour issues, began its trial on March 13, 2023, and did not end until May 3, 2023. Lesser Decl., ¶ 10. An appeal then followed, and the case was only recently settled in 2025. *Id.* Avoiding a trial and any subsequent appeals militates in favor of settlement rather than further protracted and uncertain litigation. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Accordingly, this factor weighs in favor of approval.

### 2.   The Strength of the Plaintiffs' Case and The Risk of Maintaining Class Action Status Throughout the Trial Weigh in Favor of Preliminary Approval

This factor "examines the strength of a plaintiff's case on the merits balanced against the amount offered in the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 369 (E.D. Cal. 2014). For the reasons set forth in Section III(B)(3), this *Hanlon* factor weighs in favor of approval.

### 3.   The Amount Offered in Settlement Weighs in Favor of Preliminary Approval

For the reasons set forth in Section III(B)(3), this *Hanlon* factor weighs in favor of approval.

16

**4. Stage of the Proceedings and Extent of Discovery Completed Weigh in Favor of Preliminary Approval**

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). As set forth more fully in Sections I and III(B)(1), Plaintiffs had already completed a substantial review of the underlying facts and controversy through the discovery in this case and others. Accordingly, this factor weighs in favor of approval.

**5. The Experience and Views of Counsel Weigh in Favor of Preliminary Approval**

The recommendation of counsel is afforded "great weight," as it is they who "are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526. This is because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation…. Thus, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*, at 528 (citations omitted).

Settlement Class Counsel are nationally recognized as proficient in complex class litigation, including labor, wage and hour, and discrimination claims. *See* Lesser Decl. at Ex. 5 (Lesser CV and Klafter Lesser LLP Firm Resume) and 6 (Shegerian & Associates Firm Resume). In turn, Defendants' counsel, Troutman Pepper Locke, are a prominent law firm known for labor, wage and hour, and FEHA defense practice and have served as lead defense counsel in the parallel Farmers cases.

Counsel for both sides were able to draw on their considerable experience and their detailed knowledge of this case when they entered into the mediation. The Settlement also benefited from the assistance of Mr. Hughes, a nationally recognized leading wage and hour mediator, which further supports settlement approval. *Nakash*

17

1    *v. NVIDIA Corp. (In re NVIDIA GPU Litig.)*, 539 F. App'x 822, 825 (9th Cir. 2013);

2    *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010). Accordingly,

3    this factor weighs in favor of approval.

### 6.  The Reaction of the Class Members to the Proposed Settlement

5    Because notice has not yet issued to the putative FLSA Collective or FEHA

6    Class, there has been no reaction, making this factor presently neutral. *Chen*, 2020

7    U.S. Dist. LEXIS 268083, at *40 ("the lack of such evidence [of Class Members'

8    reactions to the Settlement Agreement] is not uncommon at the preliminary approval

9    stage").

### 7.  The Presence of a Governmental Participant

11    Finally, the lack of presence of a governmental participant factor is neutral.

12    *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *15

13    (N.D. Cal. Jan. 26, 2007).

14    Thus, in sum, the Settlement should also be preliminarily approved under the

15    *Hanlon* factors and the Notices should issue.

### D. The Settlement Is Not a Product of Collusion As The *Bluetooth* Factors Are Satisfied

18    In addition to the *Hanlon* factors, the Court must also determine that the

19    settlement is not the product of collusion among the negotiating parties. *Churchill*

20    *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). The court therefore

21    looks for "subtle signs that class counsel have allowed pursuit of their own self-

22    interests to. . . infect the negotiations." *Briseño v. Henderson,* 998 F.3d 1014, 1023

23    (9th Cir. 2021) (*quoting In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

24    947 (9th Cir. 2011)). The Court of Appeals has identified three such signs: "(1) when

25    counsel receive a disproportionate distribution of the settlement, or when the class

26    receives no monetary distribution but class counsel are amply rewarded; (2) when the

27    parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys'

28

18

fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947 (citations and some internal quotation marks omitted); *Briseño v. Henderson*, 998 F.3d 1014, 1022-25 (9th Cir. 2021).[2]

None of these "subtle signs of collusion" are present here. The Settlement Agreement provides that Plaintiffs' counsel may request up to 33.33% of the Gross Settlement Amount – the amount suggested by the independent mediator. *See* Hughes Decl. ¶ 9; SA ¶ 8.4. While the traditional benchmark for fees in the Ninth Circuit is generally 25% of the common fund, *Chen*, 2020 U.S. Dist. LEXIS 268083, at *42, surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small, as here, up to $10 million. *See* Newberg on Class Actions (4th 2002) § 14:6; *Craft v. County of San Bernardino,* 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (attorneys' fees for mega fund cases are typically under the 25% benchmark while cases up to $10 million are often more than the 25% benchmark); *see also*, *e.g.*, *Brown v. Tetra Tech., Inc.,* No. 2:20-cv-01133-DJC-DMC, 2024 U.S. Dist. LEXIS 62348, at *22 (E.D. Cal. Apr. 4, 2024) ("courts in this district have previously approved fees at 33 percent of the settlement fund for wage-and-hour class actions" and finding 33% for attorneys' fees reasonable on preliminary approval); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing wage and hour cases with approvals of fee awards ranging

---

[2] Decisions differ on whether the *Bluetooth* factors must be fully scrutinized at preliminary approval. *See, e.g., Gutierrez v. New Hope Harvesting, LLC*., No. 2:19-cv-07077-FWS-AJR, 2024 U.S. Dist. LEXIS 76786, at *5 (C.D. Cal. Apr. 26, 2024) (fully analyzing *Bluetooth* factors); *Chen*, 2020 U.S. Dist. LEXIS 268083, at *30 (noting the *Bluetooth* factors and cursorily finding no collusion on preliminary approval motion but stating that Court would "scrutinize closely the relationship between attorneys' fees and benefit to the class" before final approval). Regardless, under any scrutiny level, there are no "subtle warning signs" of collusion here.

19

from 30% to 33% and approving 33% fee to class counsel); *Singer v. Becton Dickinson & Co*., No. 08-CV-821 - IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *20 (S.D. Cal. June 1, 2010) (approving attorneys' fees of 33.33% and holding award was similar to awards in three other wage and hour class actions where fees ranged between 33.3% and 40%); *Romero v. Producers Dairy Foods, Inc*., 2007 U.S. Dist. LEXIS 86270 at *1-4 (E.D. Cal. 2007) (approving award of 33% of common fund). The one-third request here is thus within the typical range,[3] and its value was set by Mr. Hughes, as he explains in his declaration. Hughes Decl. ¶ 9.

The other two factors are absent. While Mr. Hughes included a condition of no challenge to the fee in his mediator's statement, there is no "clear sailing" provision in the Settlement Agreement, nor is there any 'reversion'/'kicker' provision remitting reductions in attorneys' fees to a defendant instead of the class fund. There are thus no "subtle warning signs" of collusion. *Chen*, 2020 U.S. Dist. LEXIS 268083, at *41 ("[T]hat the Settlement Agreement is the result of a mediation held before a private mediator … supports the argument that [the agreement] is non-collusive.") (quotation omitted). The *Bluetooth* factors are thus satisfied.

///

///

///

---

[3] *See, also e.g., Morgan v. United States Soccer Fed'n*, No. 2:19-cv-01717-RGK-AGR, 2022 U.S. Dist. LEXIS 206098, at *7 (C.D. Cal. Aug. 11, 2022) (30% of attorneys' fees fair at preliminary approval stage); *Jiangchen v. Rentech*, Inc., No. CV 17-1490-GW(FFMx), 2019 U.S. Dist. LEXIS 180474, at *17 (C.D. Cal. Oct. 10, 2019) (amount not to exceed 33 1/3% of the Settlement Fund not unreasonable); *Millan v. Cascade Water Servs., Inc*., 310 F.R.D. 593, 612 (E.D. Cal. 2015) (fee of 33 1/3%, although above the benchmark, is not unreasonable); *Ramirez v. Merrill Gardens, LLC*, No. 1:22-cv-00542-SAB, 2024 U.S. Dist. LEXIS 103749, at *67 (E.D. Cal. June 10, 2024) ("The amount of attorney fees sought [33 1/3%], although above the benchmark for the Ninth Circuit, would not provide a disproportionate distribution to class counsel."); *Kendall v. Odonate Therapeutics, Inc*., No. 3:20-cv-01828-H-LL, 2022 U.S. Dist. LEXIS 6190, at *19 (S.D. Cal. Jan. 11, 2022) (fee "not to exceed 33 1/2%" supports preliminary approval as "within the range of acceptable attorneys' fees").

20

## IV.    THE COURT SHOULD PRELIMINARILY CERTIFY A SETTLEMENT CLASS FOR FEHA CLASS MEMBERS

It is axiomatic that a proposed settlement can only be realized through the certification of a settlement class. *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). Accordingly, Plaintiffs seek conditional certification of the FEHA Class for settlement purposes only under Rule 23(b)(3). To be granted conditional class certification of the FEHA Class, Plaintiffs "must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).

Plaintiffs will establish that all the elements of Rule 23 are met with respect to the proposed Settlement at the final approval stage. At the preliminary approval stage, the Court need not make formal findings as to the Rule 23(a) and (b) elements since the Court is only approving Notice. *Stoddart v. Express Servs.*, No. 2:12-cv-01054-KJM-CKD, 2019 U.S. Dist. LEXIS 17663, at *6 (E.D. Cal. Feb. 1, 2019). Regardless, the requirements for class certification are preliminarily met.

///

///

21

## A. The Elements of Rule 23(a) Are Met

### 1. Numerosity Under Rule 23(a)(1)

Rule 23(a)(1)  requires that the class be "so numerous that joinder of all members is impracticable." While courts have not established a precise threshold for numerosity, the Ninth Circuit has found that numerosity was met for classes involving as few as 39 class members. *See, e.g., Jordan v. Cty. of L.A.,* 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds,* 459 U.S. 810 (1982). The Settlement provides a recovery for approximately 255 FEHA Class Members, Lesser Decl. ¶ 16, satisfying the Rule.

### 2. Commonality Under Rule 23(a)(2)

Rule 23(a)(2)  requires that there be "questions of law or fact common to the class."  Commonality is not a high bar, thus "[t]o satisfy Rule 23(a)(2) commonality, [e]ven a single [common] question will do." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (internal quotations and citations omitted). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Here, commonality is met insofar as the claims of Plaintiffs and the FEHA Class Members are predicated on the same core common issue: whether Farmers' MUA program discriminated on the basis of age under a disparate impact and/or disparate treatment theory in violation of the FEHA. Additionally, Plaintiffs assert that how to properly compute damages presents a common question that can be resolved on an aggregate basis. Where, as here, all class members were subject to the same standardized policies and method of termination, courts have found commonality because defendant's alleged conduct would "form[] the basis of each of the plaintiff's claims." *Acosta v. Trans Union, L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007); *see also Stockwell v. City & Cty. of S.F.,* 749 F.3d 1107, 1116 (9th Cir. 2014)

22

1   ("[plaintiffs] challeng[e] a single policy they contend has adversely affected them. The

2   question whether the policy has an impermissible disparate impact on the basis of age

3   necessarily has a single answer."). Accordingly, this factor is satisfied.

### 3. Typicality Under Rule 23(a)(3)

5   Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of

6   those of other class members. Typicality exists if the named plaintiffs' claims are

7   "reasonably coextensive" with those of absent class members. *Staton v. Boeing Co.*,

8   327 F.3d 938, 957 (9th Cir. 2003). To be considered typical for purposes of class

9   certification, the named plaintiff need not have suffered an identical wrong. *Id*. Rather,

10  the class representative must be part of the class and possess the same interest and

11  suffer the same injury as the class members. *Falcon*, 457 U.S. at 156. Here, Plaintiffs'

12  appointments were terminated pursuant to the MUA program, just like all the

13  members of the putative FEHA Class, so that their claims are typical. *Rabin v.*

14  *PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2020 U.S. Dist. LEXIS 211546,

15  at *13 (N.D. Cal. Aug. 19, 2020) ("Since named plaintiffs...are challenging the same

16  allegedly discriminatory [defendant] policies and practices as the class members, their

17  claims are typical of the class"). As such, there is no concern that Plaintiffs will

18  become "preoccupied with defenses unique to [themselves]." *Murillo*, 266 F.R.D. at

19  475. Rule 23(a)(3) is thus satisfied.

### 4. Adequacy Under Rules 23(a)(4) And Rule 23(g) Is Met

21  Rule 23(a)(4) requires that "the representative parties will fairly and adequately

22  protect the interests of the class." This requirement is akin to the requirements of Rule

23  23(g), which are also met here.[4] To determine adequacy, "the court must answer two

---

[4] Rule 23 (g) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." Rule 23(g)(2) further states that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Here, Settlement Class Counsel seek appointment as lead counsel for purposes of pursuing the final approval process.

1   questions: (1) do the named plaintiff and his counsel have any conflicts of interest

2   with other class members and (2) has the named plaintiff and her counsel vigorously

3   prosecuted the action on behalf of the class?" *Murillo*, 266 F.R.D. at 475 (citing

4   *Hanlon*, 150 F.3d at 1020).

5        Adequacy is met here. As discussed in Section III(C)(5), Settlement Class

6   Counsel are experienced and competent in complex litigation, and have taken such

7   cases to trial and obtained class and collective settlements, including wage and hour

8   and discrimination cases. *See* Lesser Decl. ¶ 26, Exs. 5, 6 (firm profiles).

9        Similarly, Plaintiffs have "already expended significant time and effort

10  prosecuting this case and protecting the interests of the proposed [FEHA] Class," such

11  that the Court can determine that they are "engaged representative[s], [and] that [they

12  have] taken [their] duties as a class representative seriously." *Chen*, 2020 U.S. Dist.

13  LEXIS 268083, at *14; *see* Lesser Decl. ¶¶ 3-21 (explicating efforts). Likewise, they

14  have "no individual claims separate from the class claims... and do[] not appear to

15  have any conflicts of interest with the absent class members." *Beer*, 2024 U.S. Dist.

16  LEXIS 93502, at *16 (Olguin, J.). Accordingly, this factor is met.

17               **B. The Requirements of Rule 23(b)(3) Are Met**

18       The FEHA Class also meets the predominance and superiority requirements of

19  Rule 23(b)(3) which requires that "questions of law or fact common to class members

20  predominate over any questions affecting only individual members, and [that] a class

21  action is superior to other available methods for fairly and efficiently adjudicating the

22  controversy." Fed. R. Civ. P. 23(b)(3).

23                    ***1. Predominance Is Met***

24       The predominance inquiry "tests whether proposed classes are sufficiently

25  cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at

26  623. "When common questions present a significant aspect of the case and they can be

27  resolved for all members of the class in a single adjudication, there is clear

28                                24

justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. "[T]he general rule [is] that predominance is easier to satisfy in the settlement context." *Jabbari v. Farmer*, 965 F.3d 1001, 1006 (9th Cir. 2020).

Here, according to Plaintiffs, they and the FEHA Class Members were subject to the same MUA program policies and practices, including the same method of termination. *Rabin*, 2020 U.S. Dist. LEXIS 211546, at *15 ("the Court finds that the common questions raised by Plaintiffs' [age discrimination] claims predominate over any questions affecting only individual members of the proposed classes. Plaintiffs and the class members applied to one of three positions … and were subject to common policies and practices regarding recruitment and hiring."). Given that the MUA program applied uniform criteria to assess the performance of MUA agents, Plaintiffs assert that the questions of law and fact concerning the MUA program and its policies are common to the FEHA Class and predominate over any questions affecting only individual members such that predominance is met.

### 2. *Superiority Is Met*

The superiority inquiry under Rule 23(b)(3) requires determining whether the objectives of the particular class action procedure will be achieved in the particular case and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (citation omitted). Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

25

Fed. R. Civ. P. 23 (b)(3)(A)-(D). However, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant." *Barbosa v. Cargill Meat Sols. Corp*, 297 F.R.D. 431, 444 (E.D. Cal. 2013); *see also In re Hyundai and Kia Fuel Econ. Litig.,* 926 F.3d 539, 556-57 (9th Cir. 2019) ("The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

Here, the alternative method of resolution in this case, pursuing individual claims, would be exceedingly problematical inasmuch as proving misclassification and discrimination of disparate treatment and impact would necessarily require the full panoply of corporate discovery against Defendants and expert statistical analysis testimony, all of which could cause "litigation costs [to] dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. And while "other pending litigation is evidence that individuals have an interest in controlling their own litigation," 4 Newberg on Class Actions § 4:70 (6th ed. 2023) (emphasis omitted), the litigation that is currently pending against Defendants in California only concerns California-based agents. Counsel is aware of no other litigation by members of the Settlement Classes involving the MUA-based claims at issue here against Farmers. Accordingly, superiority is met here, and the FEHA Class should be certified for settlement purposes under Federal Rule of Civil Procedure 23(b)(3).

## V.    THE PROPOSED FLSA COLLECTIVE SETTLEMENT IS REASONABLE AND FAIR

The Ninth Circuit "has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval." *Otey v. CrowdFlower, Inc*., No. 12-cv-05524, 2015 U.S. Dist. LEXIS 141338, at *4 (N.D. Cal. Oct. 16, 2015). As a result, courts in this district apply the Eleventh Circuit's

26

widely-followed standard from *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1351 (11th Cir. 1982), under which a court should approve settlement when it "reflect[s] a reasonable compromise over issues . . . that are actually in dispute." *Lynn's Food Stores*, 679 F.2d at 1354. This requires showing: "(1) the employee's claim involves a 'bona fide dispute' over FLSA liability, and (2) the settlement is a fair and reasonable resolution of that dispute." *Reed v. Bridge Diagnostics, LLC*, No. SACV 21-01409-CJC (KESx), 2023 U.S. Dist. LEXIS 130595, at *10 (C.D. Cal. June 13, 2023).

It is well-established that the standard for approval of an FLSA collective action is lower than that of a class action. Accordingly, to the extent that the Settlement Agreement warrants approval under Rule 23, it should likewise be approved under the FLSA. *Morgan v. United States Soccer Fed'n*, No. 2:19-cv-01717-RGK-AGR, 2022 U.S. Dist. LEXIS 206098, at *5 (C.D. Cal. Aug. 11, 2022) ("Generally, settlement agreements that satisfy the stricter Rule 23(e) standard for approval will satisfy the FLSA collective action standard."); *León v. San Diego Metro. Transit Sys.*, No. 314cv01778-KSC, 2017 U.S. Dist. LEXIS 100428, at *15 (S.D. Cal. June 26, 2017) (if settlement agreement warrants approval under Rule 23, it will likely warrant approval under the FLSA as well).

## A. Bona Fide Dispute

A bona fide dispute exists "when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg.*, LLC, No. 15-cv-04080, 2018 U.S. Dist. LEXIS 171356, at *4 (N.D. Cal. Oct. 3, 2018). Here, Plaintiffs allege that they were incorrectly classified as independent contractors and therefore were not paid for overtime hours worked. Defendants, conversely, claim that Plaintiffs and the putative FLSA Collective Members were correctly classified as independent contractors and thus not entitled to overtime pay. Such a dispute is archetypical of "legitimate questions" about the extent of

27

1   defendant's FLSA liability and therefore a bona fide dispute exists. *Jennings v. Open*

2   *Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 U.S. Dist. LEXIS 171356, at *12

3   (N.D. Cal. Oct. 3, 2018); *Dashiell v. Cty. of Riverside*, No. EDCV 15-00211 JGB

4   (SPx), 2018 U.S. Dist. LEXIS 121166, at *9 (C.D. Cal. July 19, 2018).

5   ### B. The Proposed Settlement is Fair and Reasonable

6          The next consideration is whether the settlement agreement reflects a fair and

7   reasonable resolution of the asserted claims. Courts "often apply factors for assessing

8   a proposed class action settlement pursuant to Federal Rule of Civil Procedure 23."

9   *Dashiell* 2018 U.S. Dist. LEXIS 121166, at *2. However, because applying only the

10  Rule 23 factors "runs the risk of not giving due weight to the policy purposes behind

11  the FLSA," district courts in the Ninth Circuit have also "adopted a totality of

12  circumstances approach that emphasizes the context of the case and the unique

13  importance of the substantive labor rights involved." *Selk v. Pioneers Mem'l*

14  *Healthcare Dist*., 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016). This approach

15  considers many of the factors relevant to Rule 23 class action settlements, "but adjusts

16  or departs from those factors when necessary to account for the labor rights at issue."

17  *Id*. The factors courts consider are (1) the plaintiff's range of possible recovery, (2) the

18  stage of proceedings and amount of discovery completed, (3) the seriousness of the

19  litigation risks faced by the parties, (4) the scope of any release provision in the

20  settlement agreement, (5) the experience and views of counsel and the opinion of

21  participating plaintiffs, and (6) the possibility of fraud or collusion. *See id.*

22         The Settlement provides sum for the payments to Participating FLSA Collective

23  Members to be allocated on a pro rata basis based upon the number of weeks they

24  were appointed during the Settlement Class Period, a common and equitable manner.

25  SA ¶ 8.1. For the reasons stated below, this Settlement is reasonable and fair and

26  should be approved.

27  ///

28

### 1.  Range of Possible Recovery

A court considers plaintiff's range of potential recovery to ensure that the settlement amount is reasonable in relation to the value of the claims. *See Selk*, 159 F. Supp. 3d at 1174 (citations omitted). Similar to the FEHA Class claims, as discussed in Section III(B)(3), the range of possible recovery cannot be known with certainty. While Plaintiffs allege that the "Smart Office" program required agents to have their agencies open for 45 hours a week, the hours worked by each agent varied. Lesser Decl. ¶ 17. Moreover, agents generally did not record or otherwise track hours worked. Because they were paid by commission, and their earnings varied widely, it is likewise difficult to ascertain an hourly rate for the purposes of overtime calculation. With that in mind, and having taken such misclassification cases to trial in the past and being aware of how time estimations can be proven at trial and then working with the sufficient, random sampling of data provided by Defendants, and using a reasonably favorable number of hours worked by each and every FSLA Collective Member that could likely be proven at trial, Plaintiffs calculated that the a reasonable total potential damage figure was $122.5 million, but that, of course assumed a virtually impossible opt-in rate of 100%. Lesser Decl. ¶¶ 17-18. Assuming a maximum likely opt-in rate of 25%, as is expected based upon Settlement Class Counsel's extensive experience, then the maximum reasonable possible recovery, even with the favorable assumptions and taking this litigation to trial, would have been $30.625 million (using that high 25% opt-in rate). *Id.* And, like the FEHA class claims, while the FLSA Collective Allocation is well less than that number, given the risks (as discussed above and below), this represents a reasonable settlement.

### 2.  The Seriousness of Litigation Risks

The range of possible recovery must, as with the FEHA Class, be contextualized by the truly serious litigation risks faced by Plaintiffs. As discussed in Section III(B)(3), while Plaintiffs believe that their claims have merit, there is a

29

substantial risk that their claims would be rejected on summary adjudication or if the claims went to trial, that a jury could find that they and the putative FLSA Collective were correctly classified, which would result in no recovery whatsoever. Moreover, even if Plaintiffs were able to prevail on this issue, they would still need to prove that they worked overtime hours. Given the context of the similar cases in which Defendants have prevailed on the independent contractor issue, and the fact that FLSA Collective Members could potentially have difficulty with proof of hours worked (which would drive down any potential recovery using the assumptions addressed immediately below), this factor heavily weighs in favor of settlement. *Dashiell*, 2018 U.S. Dist. LEXIS 121166, at *11 ("Courts favor settlement where 'there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all.'"); *Selk*, 159 F. Supp. 3d at 1175 (finding that this factor weighed in favor of approval when there was a strong argument that the defendant had not violated the FLSA and a "real possibility that Defendant would successfully decertify one or both of the classes"); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *11 (N.D. Cal. Jan. 26, 2007) (seriousness of the litigation risks supported approval of settlement where law was unsettled as to whether stockbrokers were even entitled to overtime under the FLSA).

### 3. Stage of Proceedings and Amount of Discovery Completed

As discussed in Section I, the parties have engaged in formal and substantial informal discovery. This factor therefore weighs in favor of settlement. *Dashiell*, 2018 U.S. Dist. LEXIS 121166, at *11.

### 4. The Scope of the Release

An FLSA release "should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak v. City of Palo Alto,* No. 16-CV-03224-LHK, 2017 U.S. Dist. LEXIS 96900, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017). The goal is to "ensure that [collective] members are not pressured into forfeiting claims, or

30

waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. Settlement Agreement's release concerning the FLSA Collective is limited to wage and hour claims based on the allegations in the TAC. SA ¶ 13.4. The limited scope of the release provisions weighs in favor of approval. *Reed*, 2023 U.S. Dist. LEXIS 130595, at *27.

### 5. *The Experience and View of Counsel and Opinion of Participating Plaintiffs*

For the reasons set forth in Section III(C)(5), this factor weighs in favor of approval.

### 6. *The Possibility of Fraud or Collusion*

"The likelihood of fraud or collusion is low . . . [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." *Dashiell*, 2018 U.S. Dist. LEXIS 121166, at *14. As this is what was done here (*see* Section I), the factor weighs in favor of approval. *See also* Hughes Decl. ¶ 5.

Accordingly, the Settlement as to the FLSA Collective is fair and reasonable and should be preliminarily approved.

## VI.  THE COURT SHOULD PRELIMINARILY CERTIFY A COLLECTIVE

When, as in this case, the parties seek settlement approval of an FLSA collective action claim before seeking certification of a collective action, "courts in this circuit first consider whether certification is appropriate and then whether the proposed settlement is substantively acceptable." *Reed*, 2023 U.S. Dist. LEXIS 130595, at *8 (*citing Kempen v. Matheson Tri-Gas, Inc*., 2016 U.S. Dist. LEXIS 100537, at *4 (N.D. Cal. Aug. 1, 2016)). In *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), the Ninth Circuit specified a two-step approach to determine whether an FLSA collective action should be certified. The first step requires the Court to "make an initial 'notice-stage' determination of whether potential opt-in

31

plaintiffs are 'similarly situated' to the represented plaintiffs." *Id*. at 1110. Plaintiffs are similarly situated, and may proceed in a collective, "to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. Once a collective has received notice and discovery is concluded, "the second step allows employers to move for decertification by showing that the 'similarly situated' requirement has not been satisfied. At that point, the court 'engages in a more stringent inquiry into the propriety and scope of the collective action.'" *Reed*, 2023 U.S. Dist. LEXIS 130595, at *8 (*citing Labrie v. UPS Supply Chain Sols., Inc*., No. C08-3182, 2009 U.S. Dist. LEXIS 25210, at *4 (N.D. Cal. Mar. 18, 2009)). Furthermore, as noted supra, the standard for approval under the FLSA is lower than the standard under Rule 23. *Thompson v. Costco Wholesale Corp*., No. 14-cv-2778-CAB-WVG, 2017 U.S. Dist. LEXIS 24964, at *14-15 (S.D. Cal. Feb. 22, 2017).

Here, certification of the proposed FLSA Collective for settlement purposes is appropriate. Plaintiffs contend that the members of the proposed FLSA Collective are similarly situated because they were all appointed as agents by Farmers in the same position, signed similar agent appointment agreements with Farmers, and were subject to its alleged practice or policy of failing to compensate these agents for overtime work. This is sufficient. *Reed*, 2023 U.S. Dist. LEXIS 130595, at *9 ("The Court is satisfied as a preliminary matter that the putative party plaintiffs are alike in ways that matter to the disposition of their FLSA claims, as they held similar jobs with similar functions and were uniformly subject to [the defendant's] compensation policies that led to the alleged FLSA violations here, presenting 'similar issue[s] of law or fact material to the disposition of their FLSA claims.'") (quotation omitted).

///

///

///

32

**VII.   THE PROPOSED CLASS NOTICE AND CLAIM FORM SHOULD ISSUE**

### A. The Class Notice Satisfies Due Process

Due process requires that notice be provided to class members by the best reasonable method available. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974); *Bond v. Ferguson Enters.,* No. 1:09-cv-01662 OWW MJS, 2011 U.S. Dist. LEXIS 6976, at *20-21 (E.D. Cal. Jan. 24, 2011). The notice plan here entails mailing Notice Packets to the last known addresses of all Settlement Class Members based on Defendants' records which has been recognized as satisfying the "best practicable notice" requirement. *Eisen*, 417 U.S. at 175.

Defendants will provide the Settlement Administrator with last known contact information for all Settlement Class Members, as well as the number of compensable weeks worked during the relevant period for each FLSA Collective Member. SA ¶ 6.1.1. The Settlement Administrator will then finalize and mail the Notice Packets. The Settlement Administrator will endeavor to determine current addresses for individuals whose notices are returned undelivered, and it will re-send Notices to them as appropriate. It will also send a reminder postcard. This process satisfies all due process requirements. *See Eisen*, 417 U.S. 156; *Bond*, 2011 U.S. Dist. LEXIS 6976, at *20-23.

### B. The Proposed Notices Are Accurate and Informative

The proposed Notices provide clear and accurate information as to the nature and principal terms of the Settlement, including the monetary and other relief the Settlement will provide Settlement Class Members. They will, as appropriate, explain how to participate in the Settlement by signing an FLSA Opt-In Form (for the FLSA Collective), how to opt out by completing a FEHA Exclusion Form (for the FEHA Class), and how to object to the Settlement (for both Settlement Classes). They will also provide the date, time and place of the Final Approval hearing once set by this

33

Court. *See* Manual Fourth at § 21.312. Pursuant to Fed. R. Civ. P. 23 (h), the proposed class notice will set forth the maximum amount of attorneys' fees and expenses, as well as the incentive awards being sought for the named Plaintiffs.

The Notices also fulfill the requirement of neutrality. *See* 3 Newberg § 8.39. The Notices summarize the proceedings to date and the terms and conditions of the Settlement in an informative and coherent manner. This comports with the Manual's statement that the notice should state essential terms "concisely and clearly . . . in plain, easily understood language." *See* Manual Fourth § 21.31. The Notices clearly state that the Settlement does not constitute an admission of liability by Defendants and explain that the Court has not ruled on the merits of Plaintiffs' claims. The Notices also state that the final settlement approval decision has yet to be made. Accordingly, the Notices comply with the standards of clarity, fairness, completeness, and objectivity required of a settlement class notice. *See* Fed. R. Civ. P. 23(c)(2), 23(e); 3 Newberg, §§ 8.21, 8.39; Manual Fourth §§ 21.311, 21.312.

## VIII.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The Court should schedule a final fairness hearing to determine that final approval of the Settlement is proper. Twenty-eight days prior to that hearing, Plaintiffs' Counsel will file their application for their attorneys' fees and expenses pursuant to Rule 23(h) as well as for the Plaintiffs' service awards, which applications will be addressed at the hearing. Accordingly, the Parties request that the Court schedule the final fairness hearing for not less than one hundred (100) days from the date of this motion, as required by 28 U.S.C. § 1715.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court preliminarily approve the Settlement and enter the Preliminary Approval Order, attached as Exhibit E to the Settlement Agreement.

34

1

2

3    Dated:  August 27, 2025        By: _____

4                                        Seth R. Lesser
                                         Sarah Sears
5                                        **KLAFTER LESSER LLP**
                                         Two International Drive, Suite 350
6                                        Rve Brook. NY 10573
                                         Telephone Number: (914) 934-9200

7                                        Carney R. Shegerian
                                         Anthony Nguyen
8                                        William Reed
                                         145 S Spring Street, Suite 400
9                                        Los Angeles, California 90012
                                         Telephone Number: (310) 860 0770
10                                       **SHEGERIAN & ASSOCIATES, INC.**

11                                       **Attorneys for Plaintiffs and The Putative Settlement Classes**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 10,823 words, which complies with the word limit set by court order dated August 14, 2025 (ECF # 102).

Dated: August 27, 2025 _____/s/ Seth Lesser_____

Seth R. Lesser

36